UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA AMERSON,

        Plaintiff,

v.

M. STECHLY,

        Defendant.

                         /

Case No. 12-10375

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MICHAEL J. HLUCHANIUK

**ORDER GRANTING DEFENDANT'S MOTION IN LIMINE TO STRIKE CAUSATION TESTIMONY OF DR. DAS KARETI [83] AND DENYING PLAINTIFF'S MOTION IN LIMINE TO PERMIT TESTIMONY OF DR. DAS KARETI [84]**

      On October 9, 2015, Defendant filed a Motion in Limine to Strike Causation Testimony of Dr. Das Kareti [83]. On October 12, 2015, Plaintiff filed a Motion in Limine to Permit Testimony of Dr. Das Kareti [84]. On October 19, 2015, Plaintiff filed a Response [88] to Defendant's motion to strike. On October 20, 2015, Plaintiff's counsel sent the Court a letter on behalf of both parties, stating that Defendant has waived his objections based on Plaintiff's failure to make expert disclosures pursuant to Federal Rule of Civil Procedure 26. The only remaining issue concerning the admissibility of Dr. Kareti's causation testimony is

1

Defendant's challenge under Federal Rule of Evidence 702 and the standards of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

"Generally, a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009) (citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007)). "However, a treating physician's testimony remains subject to the requirement set forth in *Daubert* … that an expert's opinion testimony must 'have a reliable basis in the knowledge and experience of his discipline.'" *Id.* (quoting *Daubert*, 509 U.S. at 592). In other words, to determine whether the testimony is admissible the court must consider "(1) whether the reasoning or methodology underlying the expert's testimony is scientifically valid; and (2) whether that reasoning or methodology properly could be applied to the facts at issue to aid the trier of fact." *Id.* (quoting *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000)).

The Sixth Circuit has recognized that application of this standard requires distinguishing between "diagnosis (what disorder caused the set of symptoms observed?)" and "etiology (what caused the disorder diagnosed?)."[1] *Tamraz v.*

---

[1] The Sixth Circuit offered the following illustration: "[C]hronic shortness of breath may be caused by diseases ranging from emphysema to lung fibrosis to bronchitis to heart disease—which would be the diagnosis. Heart disease, to pick

2

*Lincoln Elec. Co.*, 620 F.3d 665, 669 (6th Cir. 2010).  A court should not "conflate[] a doctor's expertise in diagnosis with a doctor's expertise in etiology"—indeed, most doctors have less expertise in etiology.  *Id.* at 673.  Further, there is a significant disparity between clinical and legal approaches to etiology.  *See id.*  Accordingly, "courts must apply the *Daubert* principles carefully" to a treating physician's testimony on etiology.  *Id.*  An expert's etiological conclusion is often inadmissible unless the court answers "yes" to the following questions: "(1) Did the expert make an accurate diagnosis of the nature of the disease? (2) Did the expert reliably rule in the possible causes of it? (3) Did the expert reliably rule out the rejected causes?"  *See id.* at 674 (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009)).

Here, Dr. Kareti testified to a diagnosis of grand mal seizures, based largely on his interpretation of Plaintiff's EEG results.  He testified that the EEG results did not speak to the potential cause of the seizures.  This is consistent with the "clinical interpretation" recorded on the EEG report, in which Dr. Kareti observes an irritative process that could give rise to seizures but does not mention trauma or any other potential cause.  Dr. Kareti further testified that in 70% of cases, medical professionals—himself included—cannot determine the cause of a person's

---

one of these diagnoses, may be caused by diet, smoking, genetics or some combination of the three—which would be the etiology."  *Id.*

3

seizures to a reasonable degree of medical certainty. Nevertheless, he testified that Plaintiff's seizures were likely caused by trauma to the brain, at times identifying the specific trauma as a kick to the head suffered by Plaintiff two years before the doctor's examination. He testified that he based this opinion on Plaintiff's history, meaning what Plaintiff and his mother told him during the examination (specifically, that Plaintiff had no history of seizures until he was kicked in the head two years prior to the examination). He further testified that his practice, consistent with his training, is to automatically believe patients' self-reports rather than evaluating their credibility. He did not review any preexisting medical records concerning Plaintiff.

In sum, Dr. Kareti concluded that Plaintiff's seizures were caused by a kick or other trauma to the head only because such trauma was one possible cause and Plaintiff claimed that his seizures started after such trauma occurred. Dr. Kareti did not testify that he considered alternative causes consistent with Plaintiff's symptoms, let alone that he employed any method to determine that alternative causes were less likely. The Court therefore cannot find that Dr. Kareti's etiological conclusion—his identification of trauma, and specifically a kick to the head, as the cause of Plaintiff's seizures—is admissible scientific knowledge under Rule 702 and *Daubert*. *See Tamraz*, 620 F.3d at 670 (accepting doctor's diagnosis

4

of parkinsonism but rejecting etiological conclusion that manganese exposure was the cause). The testimony articulating this conclusion must be stricken from Dr. Kareti's video deposition to render the video deposition admissible at trial. Accordingly,

**IT IS ORDERED** that Defendant's Motion in Limine to Strike Dr. Kareti's Causation Testimony [83] is **GRANTED**. Plaintiff's Motion in Limine to Permit Dr. Kareti's Causation Testimony [84] is **DENIED**.

**SO ORDERED**.

Dated: October 22, 2015

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge